## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**VICTOR H. SPARROW, III**
1768 Willard Street, Northwest
Washington, District of Columbia 20009

Plaintiff,

v.

**AIR FRANCE-KLM GROUP**
45, rue de Paris
95747 Roissy, France

**AIR FRANCE**
45, rue de Paris
95747 Roissy, France
CDG Cedex

**SUBURBAN TRAVEL**
11510-G Rockville Pike
Rockville, Maryland 20852

Defendants.

CASE NUMBER  1:05CV0157

JUDGE: Rosemary M. Collyer

DECK TYPE: Civil Rights (non-employment)

DATE STAMP: 08/05/2005

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND DAMAGES

### PRELIMINARY STATEMENT

This action concerns the invidious discriminatory treatment of the Plaintiff and his six (6) traveling companions, all black citizens of the United States of America, by agents and servants of each of the defendants for travel on July 7, 2005 from Dulles International Airport ("Dulles") to Madrid, Spain by way of Charles de Gaulle Airport in Paris, France.

The Plaintiff seeks reimbursement, monetary consequential and exemplary damages for their joint and several refusal to allow the Plaintiff and his companions to travel in accordance with the originally contracted terms on

Flight No. 39 on July 7, 2005. This complaint also seeks damages for the treatment of the Plaintiff on his return on July 24, 2005 to Dulles when Defendant Air France refused to allow him to file a claim for damages on Air France Flight No. 26 for his "checked" baggage as was his absolute right under the provisions of the Montreal Convention. These causes of action are based upon 42 United States Code § § 1981, 1985(3), 1986, & 2000a *et seq.*

The purpose of the trip was to allow the participation of seven (7) black individuals and members of the immediate and extended family of plaintiff in the total immersion language programs "English Town" programs conducted by Vaughn Systems, S.A. in Salamanca and Puerto Gredos, Barco de Avila, Spain from July 8th through 22nd.[1]

The United States District Court for the District of Columbia possesses "supplemental jurisdiction" within the meaning of 28 *United States Code* § 1367(a) over the District of Columbia causes of action sounding in negligence, emotional distress, as well as District of Columbia Consumer Protection Procedures Act (28 *District of Columbia Code* § 3901 *et seq.*) and §2-1402.31(a)(1) of the District of Columbia Human Rights Act of 1977 (2 *District of Columbia Code* § 1402 *et seq.*)

In addition to "federal question jurisdiction" (28 *United States Code* §§ 1331 & 1603(b) over this cause, "complete diversity" within the meaning of 28 *United States Code* §1332 exists between the plaintiff and each of the several defendants.

The plaintiff demands a jury trial for all causes of action delineated in this Complaint.

/// 
/// 
///

---

[1] Please refer to http://www.puebloingles.com/ for a description of the "English Town" program.

## COUNT ONE
## FEDERAL CAUSES OF ACTION

**1.** Plaintiff, Victor H. Sparrow, III, is a black citizen of the United States and of the District of Columbia ("Sparrow"). At all times pertinent hereto the Residence of the Plaintiff is now and has been 1768 Willard Street, Northwest, Washington, District of Columbia 20009-1719. Sparrow is a "consumer" within the meaning of 28 *District of Columbia Code* § 3901.

**2.** Defendant Air France-KLM Group ("AKG") is a quasi-governmental corporation possessing limited liability which is in majority part owned and controlled by the French and Dutch Governments. One of the principal "affiliates" (within the meaning of Rules of the Securities Exchange Act of 1934 as an entity "controlling, controlled by, or under common control with "AKG") is Defendant Air France. The principal office of AKG is 45, rue de Paris 95747 Roissy, France. AKG is registered with the United States Securities and Exchange Commission under the Securities Exchange Act of 1934.[2]

**3.** Defendant Air France ("Air France") is an entity possessing limited liability holding itself out to the general public as an air transportation company for international air transportation through its principal hub at Charles DeGaulle International Airport. The principal office of Air France is also 45, rue de Paris 95747 Roissy, France CDG Cedex. Air France maintains an office for the transaction of business within the District of Columbia at 1120 Connecticut Avenue, Northwest (Suite 1050), Washington, District of Columbia 20036. Air France is an instrumentality of both "interstate commerce" and "public accommodation" within the meaning of 42 *United States Code* § 2000a(b)(1) and Section 2-1401.02(24) of the *District of Columbia Human Rights Act*.

**4.** Defendant Suburban Travel ("Suburban") is a business entity whose legal form and structure form is both unknown and undetermined with an office

---

[2] Please refer to the attached Exhibit "A."

for the transaction of business at 11510-G Rockville Pike, Rockville, Maryland 20852.[3] Suburban holds itself out for the sale of travel products to the general public at its Rockville address. It advertises heavily on the Internet through its website and in the weekly "Travel Section" of *The Washington Post*.[4]

5.    The operations of the several defendants affect interstate commerce within the meaning of 42 *United States Code* § 2000a(c)(1) over which this Court has personal jurisdiction over defendants for purposes of this action as well as jurisdiction over it pursuant to 42 *United States Code* § 2000a-6 and 28 *United States Code* §§ 1331, 1343 and 1345.

6.    On or about May 5, 2005, responding to an advertisement in *The Washington Post* after telephonic discussions with a male representative of Suburban, Sparrow appeared personally in the offices of Suburban and purchased six (6) "electronic" tickets for roundtrip air transportation on Air France from Washington to Madrid, Spain on July 7, 2005. These tickets were paid for by a cashier's check from a District of Columbia office of Branch Banking & Trust Company drawn to the order of Suburban Travel and delivered to a female representative of Suburban at its Rockville, Maryland office. Neither Sparrow nor any of his companions requested or authorized a change in the original July 7th travel itinerary.

7.    Subsequent to the original purchase of tickets from Suburban, one additional electronic ticket for the same itinerary on Air France was purchased

---

[3] Please refer to the attached Internet site and advertisement attached hereto and incorporated by reference as Exhibit "B" as well as the attached sheet from the Maryland State Department of Assessments & Taxation ("SDAT") indicating that the only Maryland entity named "Suburban Travel" registered with it was an entity in Pikesville that had been dissolved. A copy of the SDAT record in question is attached and incorporated by reference as Exhibit "C." No entity with the name of "Suburban Travel" is registered with the Montgomery County Government. The Plaintiff will move to amend this Complaint under Rules 15 & 19 of the *Federal Rules of Civil Procedure* once the true names and identities of the operators of Suburban Travel become known.

[4] A representative Suburban advertisement in the Travel Section of the *Washington Post* is attached hereto and incorporated by reference in this Complaint as Exhibit "D."

from Orbitz Travel on or about June 1, 2005 to allow an additional black person , Kimberly Brown, to travel with the original party of six (6).

**8.** On July 7, 2005, all seven (7) travelers appeared at the "check in" counter at Dulles Airport at 15:00 for transportation on Air France Flight No. 39 at 1705. All travel documents were in good order.

**9.** After being provided with an e-mail copy of the itinerary, a black male contract counter representative of Air France originally issued boarding passes for Flight No. 39 for all seven (7) black passengers.

**10.** These boarding passes were destroyed by a Caucasian female employee of Air France after the contract representative was unable to locate the names of the six (6) original travelers on the departure manifest list for Air France Flight No. 39.

**11.** Two (2) Caucasian female employees of Air France advised the travelers that their reservations had been changed from July 7th to July 6th and that they were "... unable to touch or modify the changed booking." They indicated that Kimberly Brown could travel as scheduled but insisted that any modification or change for the remaining six (6) travelers would have to be initiated by Suburban .

**12.** When the six (6) travelers explained to Air France that they had not changed the reservation and that they were required to travel to Spain for participation in the Vaughan Systems program, they were treated dismissively and ridiculed by Air France supervisory personnel at the check-in counter. This ridicule included at least one racial epithet. They were told to "step aside" and denied the use of a phone at the counter to call Suburban. In the interim Flight No. 39 departed for Paris at least forty (40) empty seats available.

**13.** Upon information and belief, similarly situated Caucasian citizens of the United States would not have been treated in such a manner by the agents and servants of Air France.

**14.** The female representative of Suburban from whom the tickets were originally purchased was contacted by cell phone and advised of the situation. Although she was unable to provide substantiation or authorization of and for the change, she insisted that the reservation had been changed by one of the travelers. She did indicate that it would be possible for a consideration of $300.00 a ticket or $1800.00 to travel on one (2) of the two (2) later Air France flights.

**15.** After extended telephone conversations between the Sparrow and Suburban and faxed exchanges and electronic and telephonic exchanges between Suburban and Air France, Sparrow was told "the fare had changed and that the price increase was now $400.00 a ticket or $2400.00 (plus applicable taxes)."

**16.** Under duress and left with no choice and under protest, Sparrow paid an additional sum of $2400.00 to Suburban to allow the departure of the six (6) original passengers on Air France Flight No. 27 at 2210.[5]

**17.** Additionally Air France after originally agreeing to waive any additional collections or charges for the seventh passenger, Kimberly Brown imposed an additional charge of $1500.00 to allow her to travel on Air France Flight No. 27 at 2210 on July 7, 2005.

**18.** Under duress, left with no effective choice, and under protest, Sparrow paid an additional sum of $1500.00 to Air France to allow the departure of the Kimberly Brown on Air France Flight No. 27 at 2210 on July 7, 2005.

**19.** Upon the payment of these additional extracted funds ($2400.00 to Suburban and $1500.00 to Air France), the seven (7) passengers left Washington Dulles International Airport for Madrid by way of Paris, France on Air France Flight No. 27 at 2210 on July 7, 2005 arriving in Madrid approximately ten (10) hours after originally scheduled.

---

[5] A complete copy of the reservation record for the original six (6) travelers is attached and incorporated by reference in this Complaint as Exhibit "E."

20. Because of this late arrival, Sparrow was forced to expend an additional $225.00 for ground transportation in Madrid to the Vaughan site in Salamanca and $190.00 for transportation to Puerto Gredos in Barco de Avila.

21. Upon information and belief, a similarly situated Caucasian citizens of the United States would not have been treated in such a manner by the agents and servants of Air France and Suburban.

22. Upon his return to Washington Dulles on July 24, 2005, Sparrow and his companions checked twelve (12) pieces of baggage at the Madrid International Airport on Air France. Each of these bags was properly packed and had no damage at the time they were checked.[6] Their itinerary was from Madrid to Paris on Air France Flight No. 1301 at 1255 followed by Air France Flight No. 26 from Paris to Washington Dulles at 1640.

23. Upon his arrival at Washington Dulles, Sparrow learned the luggage had been handled negligently by Air France in that one (1) bag had been lost and that the contents of one (1) bags had been damaged after extensive damage to the outside of the package.

24. When Sparrow attempted to report this situation by exhibiting the damaged package to the Air France Caucasian female customer service baggage representative at approximately 1920 on the ground floor of the International Arrivals Building at Washington Dulles Airport [7]in accordance with the Montreal Convention governing lost and damaged baggage, the representative refused to take a written report. She tossed s small slip of paper on the floor at Sparrow's feet and told him to call Air France customer service on the following morning if he "... [thought] it would do any good."[8]

---

[6] Please refer to Exhibit "F."

[8] A true copy of the piece of paper in question is attached and incorporated by reference in this Complaint as Exhibit "G."

25. Upon information and belief, a similarly situated Caucasian citizen of the United States would not have been treated in such a manner by the agents and servants of Air France on July 24, 2005.

26. When Sparrow called Air France on the morning of July 25, 2005, he was told that the proper procedure was for him to have reported any lost or damage to the Air France baggage customer representative at the time of his arrival.

27. The value of the materials and in the lost and damaged materials is approximately $780.00. These materials were purchased in Madrid, Spain and had been manufactured by Althea Ceramica of Civita, Castellana, Italy.

28. As a direct and proximate result of the breach of the express statutory duties imposed upon each of the Defendants under 42 *United States Code* §§ 1981 & & 2000a *et seq.* and the "Montreal Convention," the Plaintiff has suffered and continues to suffer substantial harm all to his damage in an amount according to proof including.

## COUNT TWO
## DISTRICT OF COLUMBIA CAUSES OF ACTION.

29. Paragraphs 1 through 28 are hereby incorporated by reference as if fully set out herein.

30. The conduct of each of the Defendants violate the substantive law of the District of Columbia, Section 2-1401.02(24) of the *District of Columbia Human Rights Act* and District of Columbia Consumer Protection Procedures Act (28 *District of Columbia Code* § 3901 *et seq.*) as well as torts of "intentional infliction of emotional distress" under the common law of the District of Columbia. As a direct and proximate result of the conduct and actions alleged above, the Defendants have injured the pecuniary and economic interests of the Plaintiff in violation of the law of the District of Columbia.

**WHEREFORE**, the Plaintiff prays:

1.  That the rights of the Plaintiff to injunctive relief and damages according to proof and that his rights be adjudicated and declared;

2.  That the Court enter an order requiring the Defendants to fulfill their statutory duties;

3.  That the Plaintiff be awarded $1,000.00 for each violation of the Consumer Protection Procedures Act and treble damages pursuant to the District of Columbia Consumer Protection Procedures Act as well as exemplary damages an amount of no less than $75,000.00;

4.  That the Plaintiff be allowed to recover his reasonable attorneys' fees, and all costs associated with the filing and its prosecution of this cause; and

5.  That the Plaintiff be awarded such other and further relief in law or equity as the Court may deem just and proper.

The Plaintiff demands a jury trial of all causes of action contained in this Complaint.

Dated: August 5, 2005

THE PLAINTIFF

Victor H. Sparrow, IIII

Plaintiff Pro Se
1768 Willard Street, Northwest
Washington, District of Columbia 20009

Telephone: (202) 246-7677

## VERIFICATION

I, Victor H. Sparrow, III, in my personal capacity of my own personal knowledge state and declare under penalty of perjury including but not limited to 28 *United States Code* § 1746 under the laws of the District of Columbia and the United States, that I have read and am thoroughly familiar with each of the allegations of the foregoing "Complaint." Each of the allegations is true and correct based upon my own personal. Each of the documents attached to the complaint is a true xerographic copy of a document which is now or has been in my possession.

Executed on this 5th day of August, 2005 at Washington City within the District of Columbia.

Dated: _August 5, 2005_

_____
Victor H. Sparrow, III